CULPEPPER, Judge.
This is a suit for workmen’s compensation benefits at the maximum rate of $35 per week for 400 weeks arising out of an accidental leg injury suffered by plaintiff while employed as a laborer in defendant’s saw mill. In his petition plaintiff alleged that at the time of the accident he was being paid by defendant the sum of $1.12 per hour, working nine hours per day, five days and sometimes six days per week and that his proper rate of compensation is therefore the maximum of $35 per week, but that the defendant was paying him compensation of only $34.94 per week and had refused, after amicable demand by plaintiff, to pay $35 per week to which plaintiff alleges he is entitled. Defendant first filed an exception of prematurity based, among other things, on the grounds that within eight days after the instant suit was filed, defendant paid *550 plaintiff the amount in arrears, being six cents per week for 62 weeks or a total of $3.72, plus interest, and that thereafter de--fendant has paid the maximum rate of $35 per week and consequently that there is no grounds for continuing this litigation.
After the trial judge overruled defendant’s exception of prematurity the case was fixed for trial and defendant sought a writ of certiorari from the Louisiana Supreme Court, which application was denied on the grounds that it should have been directed to the Court of Appeal, Third Circuit. Defendant then applied to the Court of Appeal, Third Circuit, for writs which were denied for the stated reason that the applicant’s remedy was by appeal. Then defendant again unsuccessfully applied for writs from the Louisiana Supreme Court and thereafter the case was tried on its merits in the lower court resulting in judgment in favor of the plaintiff as prayed for.
The sole issue presented by this appeal is whether the lower court was correct in overruling defendant’s exception of prematurity on the evidence adduced on the trial thereof. This evidence shows clearly that the plaintiff was permanently and totally disabled as a result of the leg injury received on February 23, 1959, and that plaintiff, at the time of the accident, was earning $1.12 per hour and normally and regularly worked, and was required to work, nine hours per day, five days per week. Following his injury, plaintiff was paid compensation at the rate of $34.94 per week. On April 12, i960, plaintiff’s attorney wrote a letter to the defendant advising that, according to his investigation, plaintiff was entitled to the maximum rate of $35 per week and making “amicable demand for the difference in his proper compensation rate and what he has been paid for the” “period of 59 weeks at six cents per week, or $3.53, plus legal interest thereon.” This letter was answered by defendant on April 15, 1960, stating that: “We cannot agree with you that we are not paying Matt Gill all the workmen’s compensation benefits he is entitled to. For your information, we figured his rate of compensation at $1.12 per hour at eight hours per day times six days per week, which figure comes to $53.76 and under the law he is entitled to 65% of this, which amount comes to $34.94. We have been advised by our insurance adjustors that this is the proper way to figure the amount of workmen’s compensation due to any employee.”
Following receipt of defendant’s letter of April 15, 1960, plaintiff filed the instant suit on April 27, 1960. After being served with plaintiff’s petition, defendant contacted its attorneys for advice and on May .10, 1960, defendant wrote a letter to plaintiff’s attorney advising that after rechecking their records they found that plaintiff was earning $10.08 per day and they were therefore changing his compensation rate to $35 per week as requested. In said letter, defendant also enclosed its check for the sum of $3.84 representing six cents per week for 62 weeks, plus interest at 5%.
The evidence taken on the trial of the exception of prematurity also shows that defendant had furnished all medical reports and hospital records requested by plaintiff’s attorney and had paid plaintiff compensation in the total amount of $3,660.30 and had disbursed the sum of $2,679.29 for plaintiff’s medical and hospital expense.
Defendant’s first argument is based on a quotation from Louisiana Workmen’s Compensation Law and Practice by Professor Wex S. Malone, Section 383, page 490, which reads as follows :
“In view of the language of Section 18.1(B) [LSA-R.S. 23:1314] it would appear that once the employer has defaulted, the employee should be entitled to maintain his action and secure a judgment fixing the extent of his disability and the terms upon which he shall be paid, even though the employer had resumed payments, including all arrears. However, it is likewise true that the employer, being entitled to postpone the beginning of compensa *551 tion for a reasonable period pending a prompt investigation, should have the corresponding privilege of discontinuing temporarily for the same purpose and under the same circumstances. It, therefore, appears that reasonableness of action in ceasing payment, promptness of resumption of payments, and the manifestation of a desire to cooperate should determine whether or not a prior default followed by a resumption of payment including arrears, should entitle the employer to máintain his plea of prematurity.”
The defendant cites Dawson v. Barber Bros. Contracting Company, La.App. 1st Circuit 1940, 195 So. 46, in which the majority opinion sustained an exception of prematurity, where an employer, acting in good faith on a report of an examining physician that the employee was able to resume work, discontinued payments, but after suit was filed and the employer received a new report from the same physician stating that plaintiff was disabled, it offered to resume payments. The majority opinion held that the employer had acted reasonably and in good faith, but it is noted that Judge Ott dissented, one of his reasons being that even the payments made were less than the proper amount. Defendant also cites the case of Graham v. Young, La. App. 2nd Circuit 1949, 43 So.2d 297 in which, immediately after the accident, less than the proper compensation rate was paid, but later this was corrected and the full arrears paid before suit was filed. The principal issue in the case was whether the employer was paying the correct rate and there was no showing that the defendant had refused, after amicable demand before suit, to pay the correct amount to which plaintiff was entitled.
Under these authorities, defendant argues that if the employer has acted reasonably in ceasing payments or in paying an incorrect amount and then, on being advised of his error, promptly resumes payment, including arrears, and otherwise manifests a desire to cooperate, that an exception of prematurity should be allowed. Under the Dawson case, supra, defendant contends that if an employer has a reasonable time to investigate plaintiff’s physical condition, he should likewise have a reasonable time to investigate the compensation rate and that in the instant case the defendant has acted reasonably in this regard.
Defendant argues that the error of six cents in computing plaintiff’s compensation rate was reasonable because' of confusion in the applicable jurisprudence as to whether compensation should be computed on the basis of an eight hour day, or whether “overtime” should be included. Defendant cites Farley v. Ryan Stevedoring Company, Inc., La.App., 107 So.2d 825 reversed by the Supreme Court in 238 La. 1048, 117 So.2d 587; Hoffman v. City of New Orleans, La. App., 121 So.2d 12 and others as being Court of Appeal cases which indicate that there was some confusion in the interpretation of the language used by our Supreme Court in Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399, 404 regarding the compensation rate. In our opinion, the Carrington case, supra, traces and analyzes the previous jurisprudence and makes it crystal clear that in computing the compensation rate, the first step is to determine the daily rate of pay and from this then determine his average weekly wage on the basis of a six day week. On application for rehearing in the Carrington case the Supreme Court in a unanimous per curiam held as follows:
“After determining an employee’s daily wage, the six day week is to be employed in calculating his weekly wage. If he is injured, he is deprived of this ability to work six days per week, and remuneration is awarded him for this deprivation. This test must be applied regardless of the number of days he works for the particular employer, by whom he is employed at the time of his injury.”
In the instant case, where the injured employee was paid by the hour and *552 regularly worked nine hours per day, there could be no confusion under the jurisprudence, that after determining plaintiff’s regular daily wage, including so-called overtime, if any, this figure must simply be multiplied by six in order to obtain the average weekly wage used as a basis for the compensation rate. See Troquille v. Lacaze’s Estate, 222 La. 611, 63 So.2d 139 which is identical to the instant case in that plaintiff regularly worked nine hours per day. There was no jurisprudence which could have reasonably caused defendant to think that an injured employee, who regularly works nine hours per day, should have his compensation rate figured on the basis of an eight hour day.
The jurisprudence was clear as to the compensation rate which was due in this case. Plaintiff’s attorney advised defendant of their error and demanded that it be corrected and when defendant categorically refused to do so plaintiff had no alternative hut to file suit. This complies specifically with the required allegation set forth in LSA-R.S. 23 :1314 “that the employer has refused to pay, the maximum * * * wages to which petitioner is entitled under the provisions of this Chapter”.
Defendant argues further, that the court should dismiss this suit as being premature because only the inconsequential amount of six cents per week was erroneously not paid, that this deficiency has been fully paid, that the plaintiff will not be benefited by this litigation, since he is receiving all of the compensation, medical services and expenses to which he is entitled and the prosecution of this suit will only result in plaintiff’s having to pay attorney’s fees. In our opinion, the trial judge, in his well considered written reasons for judgment, correctly disposed of this argument as follows:
“It is true that the difference of &‡ between the actual weekly compensation paid and the maximum of $35.00 to which plaintiff was entitled is very small. However, defendant was given an opportunity before the filing of this suit to correct its error, which it refused to do, and consequently plaintiff had no alternative but to file this suit to compel defendant to pay the maximum rate of compensation. Thirteen days after the filing of the suit defendant admitted its error and complied with the demands of plaintiff. Under these circumstances, even though the difference in the weekly compensation is indeed small, the defendant was not paying plaintiff the correct weekly compensation, which it refused to do after demand and before the filing of suit, and therefore the suit, when filed, was not premature.”
For the reasons assigned, the judgment appealed from is affirmed. All costs of this appeal are assessed against the defendant.
Affirmed.