LOTTINGER, Judge.
This is a suit to recover a deposit made by plaintiff with the defendant bank. The Trial Court rendered judgment in favor of plaintiff and the defendant has taken this suspensive appeal.
The record reflects that prior to May, 1973, William E. Connelly was engaged in the residential construction business in the Parish of St. Tammany. In connection with this business, Mr. Connelly had a business arrangement with defendant who provided him with construction funds through interim financing arrangements. Defendant took mortgages on two lots in Covington Country Club Subdivision and furnished Connelly with building funds.
Sometime later, Connelly began to incur financial difficulties, and the bank refused to advance further funds and instituted foreclosure proceedings on the two lots in Country Club Subdivision.
Plaintiff, who is the son-in-law of Mr. Connelly and who resides in Florida, contacted Mr. Pierre Livaudais, an attorney in Covington, with reference to his father-in-law’s difficulty. After several conversations with Mr. MacKendree, Mr. Livaudais contacted the president of the defendant bank, Mr. Richard Blossman, and ultimately $8,000.00, which has become the subject of this law suit, was deposited with the bank.
At the time of the deposit, a receipt was addressed to Mr. Livaudais and signed by Mr. Blossman, as president of the bank, which provides as follows:
“We hereby acknowledge receipt of your deposit in the amount of $8,000.00 — such deposit in the form of a check signed by Mr. Ronald O. MacKendree. These funds have been placed in an escrow account with the understanding that they are to be distributed for use in completing the William Connelly houses (2 houses). This Bank is pleased to assure you that these funds will be applied only for the completion of these houses and will be used for labor and supplies to effect same.
“This Bank is also committing that there will be no legal action taken in the nature of a foreclosure of these 2 houses before August 31, 1973. We feel that this will give Mr. Connelly sufficient time to complete the houses and to have generated 2 sales to pay the notes in full. Should the houses not be sold at that time (8-31-73) we do reserve the right to a foreclosure.”
The deposit was made in the form of a check made out by Mr. MacKendree and payable to the order of Pierre Livaudais who endorsed the check in blank and deposited it in the bank. The date of the deposit as well as the receipt was May 15, 1973. *1082 The account was opened and titled “Connelly and MacKendree Escrow Account.” Though a signature card was filled out and titled “Connelly and MacKendree Escrow” the words “Escrow Agent” placed thereon, there is no written authorization found in the record for the authorized signature on the card to be Dan Berlin, an employee of the bank.
As it became apparent that Connelly would be unable to complete the two residences for the amount of the $8,000.00 deposit, on August 9,1973, Livaudais by letter requested return of the deposit, which was subsequently refused by the bank.
Of course Mr. Blossman and Mr. Livau-dais differ with regard to the facts surrounding the deposit. Mr. Livaudais claimed that it was his understanding and instructions from Mr. MacKendree to deposit the funds in the bank for use in completing a house for which a purchase agreement has already been executed in a sum sufficient to pay off all parties financially interested. The use of the funds was first of all contingent on an arrangement being worked out with creditors so that the $8,000.00 would complete the house and leave it free and clear for sale in accordance with the terms of the purchase agreement. Mr. Livaudais testified that it was his understanding that if Mr. Connelly did not finish the houses and Connelly did not sell the houses and pay off the bank, then the bank would return the deposit.
Mr. Blossman on the other hand, contends that the $8,000.00 was an outright payment from Mr. MacKendree to the bank on behalf of Connelly, the consideration being the bank’s forbearance from foreclosure until August 31, 1973. It is his position that when the deposit was made, the bank became the owner of the funds. If this position was correct, there would be absolutely no reason why the funds were placed in an escrow account.
In its written reasons for judgment, the Trial Court said:
“Based on the physical evidence at hand, and the entire circumstances surrounding the deposit of the $8,000.00 it is the court’s opinion that the money was an escrow deposit to be used by, or on behalf of, Connelly to complete the houses and perfect sales of the same prior to August 31,1973. The money was placed with the bank to show them there were available funds to complete the houses, the bank could supervise the distribution of the funds, and in return it gave them an incentive to forebear foreclosure for a limited period of time.
“It appears clear from the law that money deposited in escrow essentially constitutes a trust fund and can be used only for the purposes of the trust, c. f. Merchants and Farmers Bank and Trust Co. v. Hammond Motors Co., Inc., 113 So. 763. The purpose here was to pay for the completion of the houses prior to August 31, 1973. The record is void of any evidence to show that the monies deposited were in any way used to complete the houses between the date of the deposit and August 31, 1973, or that the bank made any such use of its own funds for which the deposit might possibly be used to reimburse the bank. Not being so used it is the duty of the depository or escrow agent to return the escrow funds to the owner.”
As one of his specifications of error, defendant claims that the Trial Court erred in allowing or calling for an additional witness, namely Pierre Livaudais, whose testimony was taken by deposition and entered into the record, after the case had been submitted for judgment rather than finding for the defendant. The record discloses, however, that Mr. Livaudais was subpoenaed by defendant, and though he did not appear at the trial, plaintiff expected him there. Throughout the taking of testimony, the absence of Mr. Livaudais was referred to by the Trial Judge. Following the completion of defendant’s case, counsel for plaintiff advised the court that he had some rebuttal testimony but would move that they hold the case open for Mr. Livaudais’s testimony. A discussion was had between the court and the two attorneys and the court agreed to hold the case open for the *1083 deposition of Mr. Livaudais. The Trial Judge was confronted with a situation of a witness being subpoenaed by the defendant, and the plaintiff expecting the witness to appear. We find no error on the part of the Trial Judge in holding the case open for the taking of the deposition of Mr. Livau-dais, and considering that the case was not submitted for judgment until the deposition of Livaudais was filed in the record, we find no merit in appellant’s argument.
Appellant further contends that irrespective of the testimony of Mr. Livau-dais, the Trial Judge erred in granting judgment in favor of plaintiff. After a complete review of the entire record in this matter, we are of the opinion that the conclusions reached by the Trial Judge after a complete review of the facts are just as reasonable as the conclusions to be reached by the defendant, and thus find no error on the part of the Trial Judge.
Therefore, for the above and foregoing reasons the judgment of the Trial Court is affirmed. All cost of this appeal are to be paid by defendant-appellant.
AFFIRMED.