CULPEPPER, Judge
(dissenting).
I am unable to agree that plaintiff proved a disability caused by the accident.
On the day of the injury, October 7, 1970, plaintiff went to see Dr. J. W. Faulk, Jr., a general practitioner of Crowley. This physician found muscle spasm in the low back and diagnosed a back strain. He prescribed muscle relaxants. On plaintiff’s next visit to Dr. Faulk on October 16, 1970, no muscle spasm was present. From that time on Dr. Faulk was never able to find any objective symptoms, but due to plaintiff’s continued complaints of pain he kept on seeing him and actually saw him a total of 22 times during October, November, December, and January.
Finally, Dr. Faulk referred plaintiff to Dr. Fred C. Webre, an orthopedic surgeon in Lafayette. Dr. Webre examined plaintiff on January 5, 1971. After a very thorough orthopedic examination, Dr. Webre was unable to find any objective symptoms and expressed the opinion that plaintiff had recovered from whatever back strain he suffered and was able to return to hard manual labor.
Based on his own evaluation and that of Dr. Webre, Dr. Faulk discharged plaintiff on January 23, 1971 for return to manual labor.
On October 7, 1971, which was one year after the accident and about 9 months after plaintiff’s discharge by Dr. Faulk, plaintiff was examined by Dr. Heinz K. Faludi, a neurosurgeon of Shreveport. This physician found reduced lordosis, slight sco-lisos (an abnormal side-to-side curvature of the spine), slight muscle spasm in the low back and some diminution of motion in the lumbar area. With these objective findings, the history of the accident and plaintiff’s subjective complaints of pain, Dr. Faludi recommended a myelogram which was performed on November 16, 1971.
The myelogram showed that plaintiff had a congenital narrow spinal cord. Also, there was a small indentation into the canal at L5-S1. Dr. Faludi said that this indentation on the x-ray could be caused by several things: (1) a small disc, (2) adhesions from a prior injury, (3) a hemorrhage of a small blood vessel, or (4) a large blood vessel showing up on the x-ray. The doctor said the only way to determine which of these caused the indentation to appear on the x-ray was exploratory surgery.
Dr. Faludi recommended exploratory surgery but plaintiff refused. The doctor was much upset on plaintiff’s refusal of surgery and said this caused him to be sus *139 picious as to whether the subjective complaints of pain were genuine. If a person is in real pain he will probably submit to surgery to get relief from the pain.
There is no expert medical testimony that the accident “probably caused the disability.” Of course, Dr. Faulk and Dr. Webre found no objective symptoms and were of the opinion that plaintiff could return to manual labor. Only Dr. Faludi, in an examination one year after the accident, found objective symptoms. But Dr. Faludi was unable to give an opinion as to the cause of these symptoms. He could only say that a disc was a “possibility”.
Our jurisprudence still recognizes the rule that a plaintiff in a compensation case must prove both disability and a causal connection with the accident by a preponderance of the evidence. Of course, plaintiff does not have to prove this with absolute certainty, but a preponderance of the expert medical testimony must at least be to the effect that plaintiff’s condition was “probably” caused by the accident. Some of the cases say that the burden is on plaintiff to show that it is “more probable than not” that the medical cause of the disability is connected with the accident. But, a mere “possibility” is not sufficient. Many things are piedically possible and physicians will testify at length as to these different possibilities, but they are much more cautious in giving an opinion as to a probability. See Guidry v. Travelers Insurance Company, 210 So.2d 399 (La.App., 3rd Cir. 1968) ; Guillory v. New Amsterdam Casualty Company et al., 244 La. 225, 152 So.2d 1 (1960); and Buxton v. W. Horace Williams Company, 203 La. 261, 13 So.2d 855(1943).
Since I find no expert medical opinion that plaintiff is “probably” suffering from a herniated disc or other condition causally related to the accident, I would not reach a consideration of the lay testimony.
For the reasons assigned, I respectfully dissent.